IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 07-cv-02230-REB-BNB

NEW PRO PUBLICATIONS, a division of
FILTER-RITE WATER SYSTEMS, INC.,
a Canadian corporation,

      Plaintiff,

v.

LINKS MEDIA GROUP, L.L.C., and
PETER ALLEN TANDY, individually,

      Defendants.

# PRELIMINARY INJUNCTION

**Blackburn, J.**

This matter is before me on the plaintiff's motion for a preliminary injunction, which is a part of **Plaintiff's Motion for Temporary Restraining Order And Preliminary Injunction** [#2], filed October 23, 2007. I grant the motion.

## I. BACKGROUND

I conducted a hearing on the plaintiff's motion for temporary restraining order on October 25, 2007. I conducted a hearing on the plaintiff's motion for preliminary injunction on November 8 and November 15, 2007. Plaintiff New Pro Publications, a Division of Filter-rite Water Systems, Inc., a Canadian Corporation, appeared at the preliminary injunction by Gordon Alexander MacEachem, who is the founder and president of the plaintiff corporation and by counsel. Defendant, Links Media Group, LLC, has not appeared in this case via counsel or otherwise. Defendant, Peter Allen Tandy, appeared

1

in person at the preliminary injunction hearing and with counsel.

This civil action was commenced on October 23, 2007, by plaintiff's filing of the **Complaint for Damages And Injunctive Relief With Jury Demand** [#1]. The complaint avers ten (10) claims for relief: 1) trademark infringement; 2) copyright infringement; 3) unfair competition and false designation of origin; 4) trade dress infringement; 5) common law unfair competition and misappropriation; 6) unjust enrichment; 7) breach of contract - defendant Tandy only; 8) Colorado trade secrets act - defendant Tandy only; 9) permanent and temporary injunction; 10) fraudulent registration of trademark - defendant Links Media LLC only.

I have personal jurisdiction over the parties to this action. *See* the returns of service appearing in [#5 & 6]. I have subject matter jurisdiction over this action under 15 U.S.C. § 1121 (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. 1338(a) (action arising under Act of Congress relating to trademarks), 28 U.S.C. § 1338(b) (action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws), and 28 U.S.C. § 1367 (supplemental jurisdiction). Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391.

## II. FACTS

I summarize below the facts that the plaintiff has proven by a preponderance of the evidence during the hearings on the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. I will refer to exhibits admitted in evidence during the hearings by their number. In assessing the credibility of the witnesses who testified at during the hearings, I have considered all facts and circumstances shown by the evidence that affect

the credibility of each witness, including the following factors: each witness' means of knowledge, his ability to observe, and his strength of memory; the manner in which each witness might be affected by the outcome of the litigation; the relationship each witness has to either side in the case; and the extent to which each witness is either supported or contradicted by the other witness or evidence presented at trial.

Based on these considerations, I find that the testimony of defendant Peter Tandy has only limited credibility. This is particularly true with regard to the factual issues surrounding Tandy's oral repudiation of his distributorship agreement with New Pro and the factual issues surrounding Tandy's association with and involvement in Links Media Group and an entity known as National Golf Media. On several occasions, I found Tandy's testimony to be evasive. On other occasions, Tandy notably presented inconsistent testimony on factual issues that are material to the plaintiff's claims. On some occasions, Tandy's testimony was inconsistent with documentary evidence admitted at trial, which evidence Tandy conceded was authentic and accurate. At the November 8, 2007, hearing, Tandy claimed that he was not directly associated with National Golf Media. Presented with contrary documentary evidence at the November 15, 2007, hearing, Tandy essentially conceded that he is associated with National Golf Media.

Applying the considerations outlined above, I find that the testimony of Gordon Alexander MacEachem, who is the founder and president of New Pro, generally is credible and comparatively more credible than Tandy.

I find a conclude that the plaintiff has proven the following facts by a preponderance of the evidence. On March 15, 2006, New Pro and defendant Peter Allen Tandy executed an Exclusive Distributorship Agreement. Exhibit 2. The agreement concerned the publication and distribution of a product called the Caddy Card, a golf

score card system developed by New Pro. The parties contemplated that Tandy, acting as a New Pro distributor, would recruit Colorado golf courses to distribute the Caddy Card and would recruit advertisers to pay for ads that would be published in Caddy Cards distributed a golf courses. The mark "Caddy Card" is a registered trademark, and New Pro is the owner of this registered trademark. Exhibit 1.

In about mid-June of 2007, Tandy telephoned MacEachem, the president of New Pro. Tandy told MacEachern that Tandy wanted to terminate the distributorship agreement. MacEachern agreed to terminate the agreement. On July 19, 2007, New Pro, through counsel, wrote a letter to Tandy demanding that Tandy cease and desist from undertaking certain conduct that New Pro considered to be in violation of New Pro's rights under the now terminated distributorship agreement. Exhibit 5.

Following this letter, Tandy engaged in a pattern of actions that demonstrate his continued repudiation of his distributorship agreement with New Pro. After July 19, 2007, Tandy engaged in the promotion, publication, and distribution of golf score cards similar to the Caddy Card. These efforts were undertaken under the names Links Media Group, LLC, and National Golf Media. Tandy is the sole member of Links Media Group, LLC, and Tandy is directly involved in the efforts of National Golf Media to promote a golf score card product. More often than not, Links Media Group and National Golf Media used names other than the name Caddy Card for the golf score card product they sought to promote. The cards distributed by Links Media Group and National Golf Media often used the names Pocket Caddy or Pocket Pro. Tandy's efforts to promote products using these other names clearly demonstrates Tandy's repudiation of the New Pro distributorship agreement. Tandy did not communicate with New Pro about his efforts to promote a golf score card product at any time following Tandy's oral repudiation of the New Pro

distributorship agreement in mid-June, 2007.

Notably, Tandy's testimony at the November 8, 2007, hearing in this case demonstrates that he thinks that the New Pro distributorship agreement has been terminated. For example, Tandy testified as follows:

> Q   Did your relationship with Links Media cease before or after you terminated the New Pro distributorship agreement?
>
> Tandy:   After, sir.
>
> Q   With what companies, if any, are you now associated as an employee or independent contractor?
>
> Tandy:   Counsel, since my termination, I have been actively looking for a position . . .

This and other testimony given by Tandy provides additional evidence that Tandy has repudiated the New Pro distributorship agreement.

Tandy's efforts to promote golf score card products following his oral repudiation of the New Pro distributorship agreement included promotion of such products on various web sites. In several instances, these web sites included the use of the term Caddy Card, New Pro's trademarked term for its golf score card product. In several instances, the score cards promoted and distributed by Tandy included language that is identical to language used on New Pro's Caddy Card product. In several instances, the Links Media Group and National Golf Media web sites used to promote an alternative golf score card product included language that is identical to language used on New Pro's Caddy Card product. This language is subject to copyright protection, and New Pro owns the copyright to this language. The golf score cards promoted by Links Media Group and National Golf Media, with the knowledge and support of Tandy, have been distributed at

23 golf courses in the Denver area.

The New Pro distributorship agreement includes a provision that prohibits Tandy from revealing New Pro's trade secrets, and a provision that prohibits Tandy from competing with New Pro for a period of 24 months after the agreement is terminated. Exhibit 2, ¶ 13. To the extent Tandy uses New Pro's system to promote and distribute a golf sore card product that uses New Pro's trademark or New Pro's copyrighted language, Tandy's actions violate the distributorship agreement and the legal protections provided for trade secrets under Colorado law.

### III.  ANALYSIS

In determining whether a preliminary injunction should issue, I have judicially noticed all relevant adjudicative facts in the file and record *pro tanto*; I have considered the evidence adduced at the hearings; I have considered the oral argument made by counsel for the plaintiff and counsel for defendant Tandy, and I have considered the evidence presented, reasons stated, arguments advanced, and authorities cited by the plaintiff in its motion for temporary restraining order and preliminary injunction.

A preliminary injunction is extraordinary relief. A party seeking a preliminary injunction must show 1) a substantial likelihood that the movant eventually will prevail on the merits; 2) that the movant will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) that the injunction, if issued, would not be adverse to the public interest. ***Lundgrin v. Claytor***, 619 F.2d 61, 63 (10th Cir. 1980). On balance, the record in this case demonstrates that these factors weigh heavily in favor of injunctive relief in the form of a preliminary injunction.

In find and conclude that New Pro has demonstrated a substantial likelihood of success on the merits of its trademark, copyright, breach of contract, and trade secrets claims. At the hearings on the motion for temporary restraining order and on the motion for preliminary injunction, the plaintiff presented substantial evidence in support of each of these claims. The defendant presented little contrary evidence.

New Pro has demonstrated also that it will suffer irreparable injury absent an injunction. New Pro has shown that the defendants have been involved in several unauthorized uses of New Pro's trademark, New Pro's copyrighted language, and likely use of New Pro's trade secrets, to the extent the trade secret information is relevant to the promotion and distribution of products using New Pro's protected intellectual property. New Pro's trademark, copyrights, and trade secrets are essential components of New Pro's business, in Colorado and elsewhere. The defendants' appropriation of New Pro's intellectual property likely has had and will have an immediate, substantial, and harmful impact on New Pro's business in Colorado. Notably, the evidence demonstrates that Links Media Group and/or National Golf Media have distributed golf score cards at 23 golf courses in the Denver area. These cards are similar to New Pro's Caddy Card. The evidence shows that New Pro cannot readily obtain the business of these 23 golf courses, via a New Pro distributor other than Tandy, when these courses already have and use a very similar product. Under the distributorship agreement, Tandy was the exclusive New Pro distributor in Colorado. In short, if the defendants are permitted to continue their misappropriation of New Pro's intellectual property, then New Pro's relationships with other distributors and potential Colorado customers will be harmed. Such injury cannot fully be compensated with monetary damages.

In addition, the defendants' misuse of New Pro's intellectual property is likely to

create confusion among New Pro's potential customers and easily could harm New Pro's reputation and good will.  Such injury is not readily compensable with monetary damages.

The United States Court of Appeals for the Tenth Circuit has held that "a presumption of injury [arises] at the preliminary injunction stage once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits." ***Country Kids 'N City Slicks, Inc. v. Sheen***, 77 F.3d 1280, 1288 -1289 (10th Cir. 1996).  Misappropriation of trademarks and copyrights does create a high risk of irreparable injury because misuse of such rights is likely to have a bad effect on the owner's business, reputation, and good will.  However, in evaluating the evidence in this case, I have not relied on a presumption that the defendants' misuse of New Pro's intellectual property will cause irreparable harm to New Pro.  Rather, I conclude that the evidence in this case demonstrates that the defendants' misuse of New Pro's intellectual property will cause irreparable harm to New Pro.

Tandy has not presented any evidence that indicates that he would suffer any harm if the injunction requested by New Pro is issued.  Tandy claims his contract with New Pro remains in effect, but I conclude that the evidence in support of this contention is minimal to non-existent.  Absent a contract with New Pro, Tandy has no basis to claim a right to use New Pro's trademark, copyrights, and trade secrets.  Tandy has testified that he has a wide range of experience in the advertising industry, and that he is pursuing efforts in the advertising industry and in other areas in an effort to earn a living.  There is no evidence that Tandy will suffer a substantial loss of income or other harm if he is prohibited from using New Pro's intellectual property.

In intellectual property cases, the public interest normally weighs in favor of the issuance of an injunction to protect intellectual property because it is in the public interest

to uphold such protections. *See, e.g., Autoskill Inc. v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1499 (10th Cir. 1993) (copyright). On the current record, there is no showing that issuance of a preliminary injunction would be adverse to the public interest. Therefore, I conclude that this factor weighs in favor of the issuance of a preliminary injunction.

In sum, all four of the relevant factors weigh heavily in favor of the issuance of a preliminary injunction. New Pro has demonstrated a substantial likelihood that it will eventually will prevail on the merits of at least four of its claims, and that it will suffer irreparable injury unless an injunction issues. The evidence demonstrates clearly that the threatened injury to New Pro outweighs any threatened injury to Tandy. Again, Tandy presented no evidence that he would be inured by an injunction. Finally, the injunction would tend to serve the public interest in the protection of intellectual property, and there is no evidence that the injunction would be adverse to the public interest.

Under FED. R. CIV. P. 65(c), the bond previously deposited with the court by plaintiff in the amount of 300 (three hundred) dollars is deemed sufficient for the payment of such costs and damages as may be suffered by any party later found to have been wrongfully restrained.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That under FED. R. CIV. P. 65, the plaintiff's motion for preliminary injunction, part of the **Plaintiff's Motion for Temporary Restraining Order And Preliminary Injunction** order [#2], filed October 23, 2007, **IS GRANTED EFFECTIVE FORTHWITH** on the terms stated in this order;

2. That pending further order of court, defendants, Links Media Group, LLC, and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from printing, distributing, or setting out in any electronic format any New Pro Publications trademark or trade name, or any variations thereof, or any New Pro Publications trademark or trade name that is confusingly or deceptively similar to a New Pro Publications trademark or trade name;

3. That pending further order of court, defendants, Links Media Group, LLC, and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from printing, distributing, or setting out in any electronic format any designation or description of fact stating an affiliation, connection, or association between the defendants and New Pro Publications, or stating that the goods, services, or commercial activities of Links Media Group, LLC, or Peter Allen Tandy originate with, are sponsored by, or are approved by New Pro Publications;

4. That pending further order of court, defendants, Links Media Group, LLC, and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from printing, distributing, or setting out in any electronic format any of New Pro Publications' copyrighted material;

5. That pending further order of court, defendants, Links Media Group, LLC, and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from distributing, publishing, selling, or disseminating any of New Pro Publications' copyright or trademark protected materials;

6. That pending further order of court, defendants, Links Media Group, LLC, and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from making false or misleading statements regarding the Caddy Card, New Pro Publications' copyright protected materials, or New Pro Publications, whether verbally or in writing;

7.  That pending further order of court, defendants, Links Media Group, LLC, and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from claiming or asserting in any manner that Links Media Group, LLC, or Peter Allen Tandy have produced and/or distributed the Caddy Card for over a decade and have published millions of Caddy Cards to date;

8.  That pending further order of court, defendants, Links Media Group, LLC, and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from claiming or asserting in any manner to any person or entity that Links Media Group, LLC, and/or Peter Allen Tandy own or have any right to control New Pro Publications' copyright or trademark protected materials;

9.  That pending further order of court, defendant, Peter Allen Tandy, is **ENJOINED AND RESTRAINED** from disclosing or using any confidential and proprietary information of New Pro Publications, including any techniques, plans, or designs set forth in the New Pro Publications training manual;

10.  That pending further order of court, defendant, Peter Allen Tandy, is **ENJOINED AND RESTRAINED** from seeking or obtaining sales of advertisements in golf course score cards within the state of Colorado;

11.  That pending further order of court, defendant, Peter Allen Tandy, is **ENJOINED AND RESTRAINED** from disclosing confidential information of New Pro Publications concerning its services, processes, technology, research, documents, methods, or trade secrets to any other person or entity;

12.  That defendant, Links Media Group, LLC, **SHALL REMOVE FORTHWITH** from the world wide web the web sites [www.linksmediagroup.com](www.linksmediagroup.com) and

www.linksmedia.typepad.com;

      13.  That pending further order of court, defendants, Links Media Group, L.L.C. and Peter Allen Tandy, are **ENJOINED AND RESTRAINED** from engaging in communications, whether verbal or in writing, with any of New Pro Publications' current distributors or associates;

      14.  That these orders **SHALL APPLY** to each defendant, as specified in this order, and to the defendants' agents, servants, employees, independent contractors, consultants, attorneys-in- fact, attorneys-in-law, and any and all persons in active concert or participation with the defendants, jointly or severally, who receive actual notice of this Temporary Restraining Order by personal service or otherwise;

      15.  That under FED. R. CIV. P. 65(c), the bond previously deposited with the court by plaintiff in the amount of 300 (three hundred) dollars, is deemed sufficient for the payment of such costs and damages as may be suffered by any party later found to have been wrongfully restrained; and

      16.  That the plaintiff shall serve a copy of this Preliminary Injunction on defendant, Links Media Group, LLC, in the manner prescribed by law.

      Dated November 16, 2007, at 8:45 a.m. (MST), at Denver, Colorado.

      **BY THE COURT:**

      **s/ Robert E. Blackburn**
      **Robert E. Blackburn**
      **United States District Judge**